McClung Hospital, Inc. v. Commissioner. McClung Hospital, Inc., a corporation v. Commissioner.
McClung Hospital, Inc. v. Commissioner
Docket Nos. 67674, 72234.
United States Tax Court
T.C. Memo 1960-86; 1960 Tax Ct. Memo LEXIS 204; 19 T.C.M. (CCH) 449; T.C.M. (RIA) 60086; May 5, 1960
*204 Robert H. C. Kay, Esq., 511 Charleston National Bank Building, Charleston, W. Va., for the petitioner. W. Ralph Musgrove, Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: The respondent determined deficiencies in petitioner's income tax for the years and in the amounts as follows: 1952
$18,906.74
1953
17,240.83
1954
9,154.44
1955
11,498.47
1956
11,158.78
The only issue for decision is whether certain amounts paid to the officer-shareholders of the petitioner in the taxable years were deductible as ordinary and necessary business expenses. Findings of Fact The petitioner, McClung Hospital, Incorporated, was organized under the laws of the State of West Virginia in January 1951. The petitioner kept its books of account and records in accordance with an accrual method of accounting and followed the specific charge-off method of deducting bad debts. It filed its income tax returns for the years 1952 through 1956 with the district director of internal revenue at Parkersburg, West Virginia. The petitioner was organized for the purpose of operating a hospital. Prior to the formation of the corporation, *205 the hospital had been operated as a partnership. The founder of the hospital, James McClung, father of James E. McClung and William D. McClung, all three of whom are doctors of medicine, had given the hospital, including the equipment, land, and building to them subsequent to their return from service in the armed forces during World War II. Upon the formation of the corporation, they sold the hospital equipment, drugs, and supplies to it at the net book value of $18,649.83 and received therefor 500 shares of no par value common stock. They retained ownership of the land and building and leased the same to the petitioner at a rental of $500 a month. Petitioner's hospital contains about fifty beds. James E. McClung is a surgeon while William D. McClung is not. During the taxable years, the petitioner's officers and shareholders and their respective shareholdings were as follows: Name
Position
Shares
James McClung, M.D.
President
45
William D. McClung, M.D.
Vice-President
225
James E. McClung, M.D.
Treasurer
225
M. Curtis
Secretary
None
James E. McClung, M.D., and William
D. McClung, M.D., jointly
Shareholders
5
At the beginning of the period *206 in question, James McClung was approximately 76 or 77 years of age. Prior thereto, he had practiced the profession of medicine in the vicinity of Richwood, West Virginia, where he had built and operated the McClung Hospital. His practice consisted largely of what is termed "company practice" for the employees of various coal, lumber, and wood products companies operating in the area, and some individual practice. He had been a president of the West Virginia Hospital Association, a vice-president of the West Virginia Medical Association, and had served a term in the State Senate. He was qualified in hospital operation. He was instrumental in negotiating contracts for petitioner with the Welfare Fund of the United Mine Workers of America. During the tax years, he lived on a farm, about 35 to 38 miles from Richwood where the hospital was located. He had moved to the farm in 1946 after his sons returned from the service. Thereafter, he came to the hospital about once a week. His health was good for one of his age although his hearing was such that he could not be consulted on the telephone. His salary as petitioner's president during the tax years was on the basis of five per cent of the *207 petitioner's gross receipts. Prior to their operation of the hospital as a partnership, neither James E. McClung nor William D. McClung was experienced in hospital management, and they consulted with their father on both administrative and medical matters. His influence with petitioner's employees contributed to personnel stability. He visited patients at the hospital and at times acted as a consultant to the other doctors. During the summer months, he did some food purchasing for the hospital. During the taxable years, the fees for professional services rendered by all of the resident doctors of the hospital were collected by the petitioner and reported in its gross income for Federal tax purposes. The doctors were paid by the petitioner pursuant to various arrangements in effect throughout the period. In the beginning, it was decided that James E. McClung and William D. McClung should each be paid a salary of $700 per month. However, in July 1951 that arrangement was changed to a percentage of fees basis. The petitioner deducted from the total billings 20 per cent as a reserve for uncollectible accounts. An additional 25 per cent of the remaining fees was retained by the petitioner *208 to cover operating expenses, bookkeeping, and collecting expenses. The remaining 60 per cent of the fees was paid to the employed physicians. However, at the time, J. R. Gatherum, a non-shareholder resident doctor, was limited to a maximum salary of $1,000 per month. Commencing January 1, 1952, the payments to James E. McClung and William D. McClung were increased to 75 per cent of their gross fees. On July 1, 1952, the arrangement was again changed and James E. McClung and William D. McClung were to receive their entire fee billings. Among the corporate powers contained in petitioner's charter was the following: "(e) To employ physicians, surgeons, interns, nurses, chemists, diagnosticians, X-ray operators, dieticians, technicians and members of any other profession, trade, science, art or skilled employment connected in any manner with the treatment of disease, and to offer the services of all such persons to those desiring same, whether in connection with the conduct of said hospitals, sanitoriums, and other institutions or at any other places and in other ways, and to charge and receive proper remuneration therefor, and to do each and every other thing incidental to, necessary *209 or convenient in attaining all objects and purposes herein authorized." Throughout the taxable years in question, the non-shareholder resident doctors of the hospital were paid a maximum of 60 per cent of their fee billings. During the years 1952 and 1953, there was a further limitation that they were not to be paid more than $1,000 per month or $12,000 per year. However, in 1954, the $12,000 limitation was abolished and the non-shareholder doctors received 60 per cent of their fee billings. At a directors' meeting on February 28, 1956, a further change in the compensation arrangement was made. James E. McClung and William D. McClung decided to open a clinic in a building adjoining the hospital. They were to employ the non-shareholder resident doctors and to arrange for their salary. The petitioner was to pay for the office alterations, equipment, nursing assistance, medical supplies, and bear all other expenses incident to the operation of the clinic. Petitioner agreed to collect the professional fees and remit them to James E. McClung and William D. McClung. They in turn agreed to refund to the petitioner 40 per cent of the fees of the non-shareholder doctors as payment for such *210 facilities and services. The professional fees of James E. McClung and William D. McClung were to be excluded from this percentage refunding arrangement. In addition to the foregoing fee arrangement, they were to receive from the petitioner as rent for the subleased clinic, the nurses' home, and the hospital building, four per cent of the petitioner's gross income. The minutes of petitioner's Board of Directors for a special meeting on February 24, 1954, contain the following: "The Directors' attention was called to the minutes of the meeting of January 30, 1954, wherein the payment to the Physicians was referred to as salary. The Board felt that this should be corrected since a Corporation does not practice medicine. It was the intention of the Board that the Physicians were practicing medicine in their own right at the hospital, and that the reference made to the amount which they should receive out of their earnings was the amount felt necessary for the continued success of the operation. * * *" Petitioner, during the taxable years in question, had a gross income, net or taxable income, and bad debts, shown on its income tax returns as follows: Gross
Net or
Bad
Year
Income
Taxable Income
Debts
1952
$275,008.98
$26,723.53
$11,316.08
1953
284,931.81
20,506.95
11,951.33
1954
277,262.48
(17,506.49)
16,285.00
1955
337,614.43
24,088.87
21,949.50
1956
230,192.59
20,096.39
19,562.38
*211 For the taxable years in question, the petitioner paid no dividends, paid compensation to its officers and shareholder doctors, and had earned surplus in the amounts as follows: Officers and Share-
Earned
Year
holder Doctors *
Surplus
1952
$86,496.69
$58,723.91
1953
85,862.91
64,205.47
1954
73,172.00
46,698.98
1955
72,624.07
69,174.32
1956
83,036.18
83,241.79
In each of the taxable years in question, petitioner billed the patients for professional services rendered to such patients by the named doctors in amounts as indicated: William D.
James E.
Year
McClung
McClung
1952
$52,737.30
$28,041.00
1953
47,905.00
19,334.00
1954
39,007.50
15,355.50
1955
35,762.00
15,832.50
1956
44,344.50
20,892.00
The amounts of compensation claimed as a deduction, the compensation allowed, and amounts disallowed by respondent, for the shareholders-doctors of petitioner, for the years 1952 through 1956, are as follows: James McClung
Compen-
Compen-
Compen-
sation
sation
sation
Year
Paid
Allowed
Disallowed
1952
$13,696.84
$5,200.00
$ 8,496.84
1953
14,223.91
5,200.00
9,023.91
1954
13,839.50
5,200.00
8,639.50
1955
16,829.57
5,200.00
11,629.57
1956
12,424.68
5,200.00
7,224.68
*212 William D. McClung
Amounts
Amounts
Amounts
Year
Paid
Allowed
Disallowed
1952
$34,387.43
$34,387.43
None
1953
33,639.50
33,639.50
None
1954
34,498.00
29,255.62
$ 5,242.38
1955
31,755.02
26,821.50
4,933.52
1956
44,344.50
33,258.38
11,086.12
James E. McClung
1952
$34,387.42
$21,030.75
$13,356.67
1953
33,624.50
14,500.50
19,124.00
1954
20,459.50
11,516.62
8,942.88
1955
19,839.48
11,874.37
7,965.11
1956
20,892.00
15,669.00
5,223.00 In addition to the foregoing, James E. McClung and William D. McClung received as salaries for management of the hospital in the year 1956, the sum of $500 each. The compensation paid to James E. McClung and William D. McClung after July 1, 1952, amounted to 100 per cent of the aggregate fees billed by petitioner for their combined professional services, without any deduction for uncollectible accounts, bookkeeping, collection fees, or operating expenses. The compensation paid by petitioner to James McClung for the services actually performed by him for petitioner for the years 1952 through 1956 was unreasonable in each of those years to the extent that it exceeded $5,200 per annum. *213 Amounts paid William D. McClung and to James E. McClung did not constitute unreasonable compensation in any of the years involved. Opinion The question of what constitutes reasonable compensation is a question of fact to be determined on the basis of the facts and circumstances of each particular case, (C.A. 4, 1945). Thus our findings of fact dispose of the issues here involved. With regard to the compensation paid James McClung, the respondent disallowed the excess over $5,200 in each year. The respondent's determination in this respect must be sustained. The senior McClung was a practicing physician of wide experience and state-wide reputation. However, we are here concerned with the value of the services he actually performed for the petitioner during the tax years. He was of advanced years and lived at considerable distance from the hospital. The services which he in fact performed were occasional, irregular, and ill-defined. On the basis of the record before us, the value of those services to the petitioner did not exceed $100 per week, the amount allowed as reasonable by respondent. While their father was *214 nominal head of petitioner, there is no question but that the overall operation of the hospital was in the direct charge of James E. McClung and William D. McClung. Their services in operating and administering the hospital, together with their professional services to patients, were full-time and substantial. However, the respondent has disallowed a portion of the payments to the two doctors on the basis that it represented unreasonable compensation. In support of this determination, the respondent refers to the fact that the other resident doctors received a lesser proportion of their patient fees and to the fact that the McClungs' fees were not reduced by overhead expenses or uncollectible accounts. The fact that James E. McClung and William D. McClung were paid on a more liberal basis than were other physicians who were junior to them and who occupied positions of lesser responsibility is not controlling. With respect to the fact that the two brothers together received their entire patient billings without reduction for expenses or uncollectible accounts we likewise do not consider to be controlling under the circumstances. In , *215 affd. (C.A. 9, 1958) we had occasion to consider a somewhat similar problem, and there we held hospital payments to individual doctors up to one hundred per cent of their billings to be reasonable compensation for their services. It is true that here, while the amounts received by the brothers aggregated one hundred per cent of their billings, James E. McClung received more and William D. McClung received less than one hundred per cent of their respective individual billings in the years 1953, 1954 and 1955. As an alternative position, therefore, the respondent argues that at least we must disallow the payments to James E. McClung that exceeded one hundred per cent of his individual billings. We do not agree. The aggregate payments to the two doctors represented a reasonable compensation for their services. The fact that the total was allocated on a basis apparently intended to recognize certain differences in the value of those services provides no basis for our refusal to recognize that allocation and for the substitution of our judgment in that respect for that of those directly concerned. The petitioner argues that James E. McClung and William D. McClung *216 were not paid compensation by petitioner and that the latter simply collected their fees and distributed those fees to them on a basis fixed by an alleged partnership agreement between them. The petitioner points to the fact that West Virginia law prohibits the practice of medicine by a corporation. However, we need not and do not decide the question thus presented in view of our holding that the payments involved were not unreasonable, assuming that those payments did in fact constitute compensation for services. Decisions will be entered under Rule 50. Footnotes
*. Includes the salary paid to M. Curtis, Secretary, as shown on the returns.↩