953 F.2d 639
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
RICHLANDS MEDICAL ASSOCIATION, Petitioner-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 91-1609.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 28, 1991.
Decided Jan. 31, 1992.
 
 Appeal from the United States Tax Court. (Tax Ct. No. 86-16595)
 Argued: Richard David Barbe, Moss & Rocovich, P.C., Roanoke, Va., for appellant; Janet Kay Jones, Tax Division, United States Department of Justice, Washington, D.C., for appellee.
 On Brief: Shirley D. Peterson, Assistant Attorney General, Gary R. Allen, Jonathan S. Cohen, Tax Division, United States Department of Justice, Washington, D.C., for appellee.
 USTC
 AFFIRMED.
 Before K.K. HALL and WILKINSON, Circuit Judges, and JOSEPH H. YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Richlands Medical Association appeals from the Tax Court's decision determining deficiencies in its income tax liability for tax years 1982 and 1983. Petitioner raises two issues on appeal, whether the deduction claimed by Richlands Medical Association for compensation paid to its three physician-owners was reasonable, and, if not, did the Tax Court err in assessing negligence penalties against Richlands Medical, pursuant to I.R.C. § 6653(a)(1) and (2).[1]
 
 BACKGROUND AND PROCEEDINGS BELOW
 
 2
 Richlands Medical Association ("RMA") is a professional association with its principal place of business in Richlands, Virginia. Starting in mid-1982 and continuing for the remainder of the taxable years in issue, Doctors McVey, Moore, and Khuri ("owner-physicians") were the sole associates of RMA and were also the sole members of its Board of Directors. RMA employed other physicians, in addition to the owner physicians, to work at the hospital. In 1982 there were eight of such nonowner physicians employed at the hospital, and in 1983, there were ten. In the year ending 10/1/82 and 10/1/83, RMA paid its owner-physicians salaries ranging from $566,552-$977,778. These amounts were listed as officers' compensation, and deducted from the Association's income tax liability for the particular year. In 1982 RMA reported taxable income of $18,169, and claimed a deduction of $2,246,854 for salaries paid to its three owner-physicians. In 1983, RMA reported taxable income of $3,185 and claimed a deduction of $2,070,000 for salaries paid to its three owners.
 
 
 3
 In 1986, the Internal Revenue Service found that the amounts deducted by RMA as salary expense for the three owner-physicians exceeded a reasonable allowance for "salaries or other compensation for personal services actually rendered," and disallowed a total of $1,416,569.87 and $1,351,336.84 for 1982 and 1983, respectively. 26 U.S.C. § 162 (1989).[2] The IRS allowed as a reasonable deduction an amount equal to 100 percent of the "collections" recorded for medical services performed by each owner-physician. The IRS also assessed negligence penalties against RMA for failing to make a reasonable attempt to comply with the provisions of the Code. 26 U.S.C. § 6653(a)(1) and (2).[3] The Tax Court determined the compensation claimed was unreasonable, although it allowed a greater deduction than the Commissioner was willing to allow, and that RMA was liable for the negligence penalties assessed by the Commissioner.
 
 STANDARD OF REVIEW
 
 4
 The Commissioner's determination of a reasonable allowance for compensation in a specific case, carries a clear presumption of correctness-- Cozart Packing Company, Inc. v. Commissioner of Internal Revenue, 475 F.2d 1399 (4th Cir.1973) (citing Commissioner v. Duberstein, 363 U.S. 278 (1960)). The burden is placed upon the taxpayer to prove that it is entitled to a deduction larger than that determined by the Commissioner. Miller MFG. Co., Inc. v. Commissioner of Internal Revenue, 149 F.2d 421 (4th Cir.1973). The Tax Court's determination will not be reversed unless it is clearly erroneous. See Owensby & Kritikos, Inc. v. C.I.R., 819 F.2d 1315, 1323 (5th Cir.1987). A finding is clearly erroneous when, although there is evidence to support it, a review of the entire record leaves the reviewing court with the definite and firm conviction that a mistake has been made. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291 (1959). See Faulconer v. C.I.R., 748 F.2d 890, 895 (4th Cir.1984).
 
 DISCUSSION
 
 5
 The primary issue in this case is whether the Tax Court erred in finding that the compensation paid by RMA to the owner-physicians, was unreasonable. In addressing the reasonableness issue, a trial court should consider several factors. These include:
 
 
 6
 the employee's qualifications; the nature, extent and scope of the employee's work; the size and complexities of the business; a comparison of salaries paid with gross income and net income; the prevailing general economic conditions; comparison of salaries with distributions to stockholders; the prevailing rates of compensation for comparable positions in comparable concerns; [and] the salary policy of the taxpayer as to all employees.
 
 
 7
 Owensby & Kritikos, Inc. v. C.I.R., supra (quoting from Mayson Manufacturing Co. v. Commissioner, 178 F.2d 115 (6th Cir.1949)). No single factor is decisive; rather the trial court must consider and weigh the totality of the facts and circumstances when making its decision. Id. Where officer-shareholders are in control of a corporation and set their own compensation careful scrutiny is required to determine whether the alleged compensation is in fact a distribution of profits.
 
 First Allegation of Error
 
 8
 RMA alleges that the Tax Court erred by excluding a letter from RMA's expert (the "May 23 letter") containing specific figures indicating that a substantial portion of the total compensation paid to RMA's owner-physicians in 1982 and 1983 included cash payments received from "third party payers" for services rendered to patients in prior fiscal years; and by not permitting RMA's expert to testify about the contents of the May 23 letter during rebuttal.
 
 
 9
 The Tax Court excluded the letter because RMA failed to properly disclose it prior to trial in violation of Tax Court Rule 143(f), and the Court's pre-trial order. Tax Court Rule 143(f) provides that:
 
 
 10
 Unless otherwise permitted by the Court upon timely request, any party who calls an expert witness shall cause that witness to prepare a written report for submission to the Court and to the opposing party.... each party who calls any expert witness shall furnish to each other party, and shall submit to the Court, not later than 30 days before the call of the trial calendar on which the case shall appear, a copy of all expert witness reports prepared pursuant to this subparagraph. An expert witness' testimony will be excluded altogether for failure to comply with the provisions of this paragraph
 
 The Court's pre-trial order states that:
 
 11
 Unless otherwise permitted by the Court upon timely request, expert witnesses shall prepare a written report which shall be submitted directly to the undersigned and served upon the opposite party not less than fifteen (15) days before the calendar call. An expert witness' testimony may be excluded for failure to comply with this Order....
 
 
 12
 RMA did not submit the May 23 letter until the day of trial. The Tax Court did not abuse its discretion by excluding this letter. See Adalman v. Baker, Watts & Co., 807 F.2d 359, 369 (4th Cir.1986).
 
 
 13
 In the alternative, RMA contends that its expert's testimony was properly offered to rebut the testimony of the Commissioner's expert that the increased compensation during fiscal years 1982 and 1983 did not reflect payment for "services rendered."[4] In light of the Tax Court's findings, the failure to permit RMA, through its expert, to rebut this testimony, even if erroneous, was not reversible error.
 
 
 14
 The Tax Court determined, independently of either petitioner's or respondent's expert, that the compensation paid in the years at issue was unreasonable. Analyzing the factors set forth in Mayson Mfg. Co. v. Commissioner, 178 F.2d 115, 119 (6th Cir.1949), the Tax Court noted that several factors weighed against RMA. These factors included:
 
 
 15
 the large increases in associate compensation during the years in issue, the magnitude of such increases as compared with the increases in petitioner's gross income, and the failure of petitioner to pay dividends....
 
 
 16
 Richlands Medical Association v. Commissioner of Internal Revenue, 60 T.C.M. (CCH) 1572 (December 31, 1990). The Court noted that no single factor was determinative, then proceeded to address the merits of each parties' argument.[5] In light of the Court's multifaceted finding, the failure to permit RMA's expert to testify regarding the specifics of the May 23 letter is not reversible error.
 
 Second Allegation of Error
 
 17
 RMA alleges that the Tax Court ignored uncontested evidence of $500,000, received as reimbursement for services provided during its fiscal year ending in 1981. This amount was purportedly part of the compensation paid to the owner-physicians in the years at issue, and, according to RMA, should be deductible.
 
 
 18
 Evidence of the $500,000 certificate of deposit is found in the minutes of two RMA meetings. On January 31, 1983, an entry states:
 
 
 19
 Mr. Davis gave a brief financial report. He indicated that the hospital had received $100,000 as a tentative settlement for FYE 10/31/81. He indicated that $100,000 was put on a CD at the Sentinel Savings and Loan Association.
 
 
 20
 This entry does not reflect whether the $100,000 settlement was for hospital or physician services.
 
 A March 28, 1983 entry states:
 
 21
 Mr. Davis gave a brief financial report. He indicated that at the present time, the hospital has $500,000 on Certificate [sic] Deposit.
 
 
 22
 This entry does not indicate the source of these funds. The Tax Court's implicit ruling that this evidence was unreliable is not clearly erroneous.
 
 Third Allegation of Error
 
 23
 RMA argues that the Tax Court erred in setting reasonable compensation for the owner-physicians at 100 percent of collections because this finding (a) ignored the distorting effect of "nondesignated partial payments," and (b) failed to take into account the significant value distinction between the direct medical services provided by the owner-physicians, and that provided by non-owner physicians.
 
 A. Non-Designated Partial Payments
 
 24
 During the years at issue, RMA utilized a two-part billing system consisting of a "hospital component" and a "physician component." The physician component consisted of a physician's medical charge for patient services, and the hospital component consisted of everything else, including ancillary services, such as anesthesia, operating room, lab, EKG, drugs, and X-rays.
 
 
 25
 RMA contends that, while third party partial payments received by RMA from Medicaid, Medicare and Blue Cross specified whether the amount was payable for the hospital and/or physician component, payments from other sources did not. RMA states that "the majority of [partial] payments received by RMA from private insurance companies did not designate how the payment was to be applied." RMA's practice was to credit such payments to the hospital portion of the bill, and then apply the remainder, if any, to the physician component of the bill. RMA's expert testified that had these payments been credited properly, the physicians' collection rate would have reflected the national norm of 92 percent of billings, a much higher figure than 100 percent of collections.
 
 
 26
 Opinion testimony of an expert is admissible if and because it will assist the trier of fact to understand evidence that will determine a fact in issue. See Fed.R.Evid. 702. The Tax Court is not bound by the opinions of an expert where such opinion is contrary to the Court's own judgment. Helvering v. National Grocery Co., 304 U.S. 282, 295 (1938); Estate of Kreis v. Commissioner, 227 F.2d 753 (6th Cir.1955). Further, the Tax Court may embrace or reject portions of an expert's testimony. Parker v. Commissioner, 86 T.C. 547, 562 (1986). See also Silverman v. Commissioner, 538 F.2d 927, 933 (2d Cir.1976) ("the Tax Court is not bound by the formulas or opinions proffered by expert witnesses"). Here, the Tax Court offered valid reasons for its rejection of the expert's methodologies.
 
 
 27
 The Tax Court found little evidentiary support for the conclusions of the expert that RMA's owner-physicians' collection rate "would have equalled the national norm" had RMA not followed the practice of allocating nondesignated partial payments first to hospital charges. Neither the expert report, nor any other evidence offered by RMA, analyzed the effect of RMA's receipt allocation practices in quantitative terms. Moreover, the expert's report states that "generally," third party payers would identify their payments as attributable to hospital or physician charges. This fact, and the fact that partial payments from Blue Cross, Blue Shield and other Government insurance programs did designate partial payments as hospital or physician services was sufficient for the Court to find that RMA's expert's conclusions regarding the distorting effects of nondesignated partial payments was meritless.
 
 
 28
 The Tax Court found unreliable the 92 percent collection rate figure used by petitioner's expert as a "national norm" because the article relied upon by the expert limited its discussion to "officebased M.D.s," which suggested that there is a difference in the data applicable to "hospital-based physicians." This finding was not clearly erroneous.
 
 
 29
 B. Enhanced Compensation for Medical Services Rendered
 
 
 30
 RMA contends that the Tax Court erred in using collections as the basis for its compensation determination because the owner-physicians performed certain medical supervisory functions that merited enhanced compensation, and the owner-physicians generated "the majority of the ancillary revenues." McClung Hospital, Inc. v. Commissioner, 19 T.C.M. 449 (1960).
 
 
 31
 RMA's expert assigned a value of $295,320 for the year 1982 and $310,860 for the year 1983 for medical supervisory services rendered. The court found the expert's methodologies for arriving at these figures lacking. Neither the report submitted by petitioner's expert, nor the report upon which petitioner's expert relied in deriving these amounts, provided figures on the amount of time devoted to such responsibilities. The Court found that some of the medical "titles" associated with these supervisory responsibilities, i.e. director of radiology and director of anesthesia, carried limited substantive responsibilities because the titles were unrelated to the owner-physicians' medical specialty.
 
 
 32
 RMA's executive secretary and office manager testified that the owner-physicians were entitled to a compensation enhancement because they were the major "admitters" to the hospital and generated the "majority of ancillary revenue." The Tax Court noted that petitioner's expert presented no quantitative analysis of the "profit" or "mark up" on ancillary services, and did not specify which owner-physicians provided which services.
 
 
 33
 Based on these factual findings, the Court's decision not to allow additional compensation based on ancillary charges was not clearly erroneous and set the allowable compensation deductions for medical supervisory services at 190,000 for 1982 and 200,000 for 1983. RMA has failed to show that it is entitled to a deduction larger than that determined by the Court.
 
 Negligence Penalties
 
 34
 Section 6653(a)(1) of the Internal Revenue Code applies a 5 percent penalty on the entire underpayment if any part of the underpayment is due to negligence. In contrast to § (a)(1), § 6653(a)(2) applies a penalty only to the portion of the underpayment that is attributable to negligence or intentional disregard of rules and/or regulations.[6] Negligence is defined as the failure to make a reasonable attempt to comply with the provisions of the Tax Code.
 
 
 35
 The Tax Court found that RMA acted negligently in taking its compensation deduction and applied a § (a)(1) penalty to RMA's entire tax underpayment, and a § (a)(2) penalty to that portion of the deduction for compensation taken by RMA that exceeded RMA's expert's calculation of a "minimum" reasonable compensation. First, the Court found that the deductions claimed by RMA were substantially in excess of the amounts found to represent reasonable allowances for services provided. Second, RMA's bylaws provided for the distribution of all of its net profits among the owner-physicians at year end. Seventy-five percent was divided according to each ownerphysician's "productivity factor," the other 25 percent was divided equally. The Court found that the latter 25 percent represented what should have been distributed based on ownership, i.e., as dividends. Third, RMA's own expert computed 'minimum' reasonable compensation at 66 and 74 percent of the amounts claimed by petitioner in its returns for the years 1982 and 1983 respectively. Based on this evidence, the Court found that RMA acted negligently.
 
 
 36
 RMA argued that it was insulated from liability for negligence because its returns were prepared by a certified public accountant. In the alternative, RMA contends that it acted under a good faith belief that the compensation paid to the owner-physicians was reasonable, and these amounts were fully disclosed on its tax return. It was found that these facts, without more, did not insulate petitioner from the application of a negligence penalty. Epoch v. Commissioner, 57 T.C. 781, 802-803 (1972). Reliance on the advice of an agent employed by the taxpayer does not absolve the taxpayer of the duty to exercise ordinary business care and prudence. United States v. Boyle, 469 U.S. 241, 254 (1985) (Brennan, J. concurring). The Court found that RMA failed to show that its officers, "who were well educated and highlypaid individuals," received any "advice" from its accountant concerning allowable compensation deductions. The record contains no evidence that RMA's owners ever discussed the issue of reasonable compensation with their accountant or received an opinion specifically on that issue. There is no evidence that RMA provided full disclosure of all relevant facts to its accountant so that any accounting advice provided to RMA would constitute an informed opinion. Leonhart v. Commissioner, 414 F.2d 749, 750 (4th Cir.1969). For example, there is no evidence that the accountant had any knowledge of the duties performed by RMA's owners, or of compensation paid to persons similarly situated.
 
 
 37
 In the absence of such evidence, the Tax Court found that RMA's treatment of all distributions to owner-physicians as compensation was unreasonable. In light of the record developed in this case, this finding was not clearly erroneous. While a showing of honesty, good faith, and disclosure by the taxpayer may preclude the existence of fraud, good faith alone does not always preclude negligence. American Properties, Inc. v. Commissioner, 28 T.C. 1100 (1957), affd, 262 F.2d 150 (9th Cir.1958).
 
 
 38
 Thus, by applying a five percent penalty to the entire underpayment pursuant to § (a)(1) and a § (a)(2) penalty to that portion of the deduction for compensation taken by RMA that exceeded its expert's calculation of a "minimum" reasonable compensation, the Tax Court did not abuse its discretion.
 
 
 39
 AFFIRMED.
 
 
 
 [1]
 RMA also challenged the Commissioner's determination that it was an association, taxable as a corporation. RMA has not raised this issue on appeal therefore, it is waived. See Fed.R.App.P. 28(a)(2) and (4); United States v. Williams, 378 F.2d 665, 666 (4th Cir.1967)
 
 
 [2]
 Section 162 of the Internal Revenue Code allows for the deduction of all "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including ... a reasonable allowance for salaries or other compensation for personal services actually rendered." 26 U.S.C. § 162(a)(1)
 
 
 [3]
 All references are to the Internal Revenue Code of 1954, as amended and in effect for 1982 and 1983
 
 
 [4]
 According to Petitioner, the Commissioner's expert concluded in his written report that "when compensation shows a marked increase from an established pattern without justification, the increase is probably not warranted as payment for services rendered." Under Tax Court Rule 143(f), an expert's written report is considered direct testimony
 
 
 [5]
 RMA's expert was permitted to testify generally about the cost reimbursement practices of third party payers which, in certain circumstances, may delay payment for services rendered for up to two years. The court excluded testimony only as to the specific figures, purportedly reflecting cash payments for services rendered in prior years, that were contained in the May 23 letter
 
 
 [6]
 26 U.S.C. § 6653(a)(1) provides:
 If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by chapter 45 (relating to windfall profit tax) is due to negligence or intentional disregard of rules or regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.
 26 U.S.C. § 6653(a)(2) provides:
 There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601.
 (a) with respect to the portion of the underpayment ... which is attributable to ... negligence, and
 (b) for the period beginning on the last date prescribed by law for payment of such underpayment ... and ending on the date of the assessment of the tax (or, if earlier, the date of the payment of the tax).